IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, Plaintiff, | **ORDER AND MEMORANDUM DECISION** |
| -vs- | |
| LORENZO HENRY DUDLEY, Defendant. | Case No. 2:06-cr-805 TC |

Defendant Lorenzo Dudley has filed a Motion to Suppress Evidence seized pursuant to a search and seizure warrant. Mr. Dudley argues that the warrant was not valid because the underlying affidavit failed to establish probable cause and because the warrant was not adequately specific. He also seeks suppression of evidence found during the search which was not included in the warrant.[1]

The court finds that the affidavit established probable cause to issue the warrant and the warrant was sufficiently specific. Additionally, pursuant to the plain view doctrine, the police lawfully seized contraband not listed in the warrant.

The court DENIES Mr. Dudley's motion to suppress.

[1]Mr. Dudley has also requested a Franks hearing. The court reaffirms its previous order which denied Mr. Dudley's request. See June 22, 2007 Order.

**FINDINGS OF FACT**[2]

After investigating Mr. Dudley for suspected narcotics distribution for one month, Deputy Briant Smith submitted an affidavit to a district court judge for the State of Utah to obtain a search and seizure warrant for Mr. Dudley's residence.

In the affidavit, Deputy Smith stated that a confidential informant ("CI") informed the deputy that Mr. Dudley was selling cocaine from his residence. The CI—an admitted narcotics user—had previously purchased cocaine from Mr. Dudley. The CI was not in custody at the time.

To corroborate the CI's information, the deputy conducted a controlled buy with the CI. Deputy Smith searched the CI for money, contraband, and narcotics. After finding none of the above, the deputy gave money to the CI and accompanied the CI to Mr. Dudley's residence. The deputy, along with other detectives, watched the CI go into the residence and then leave after several minutes. The CI then gave the detectives cocaine which was reportedly purchased from Mr. Dudley. A subsequent search of the CI revealed no money, contraband or narcotics.

Mr. Dudley did not own the residence—and the utilities were not in his name—but Deputy Smith stated in his affidavit that several units in that development were rented to second parties.[3] Also, Mr. Dudley had previously provided law enforcement with this address as his residence and the CI informed the deputy that Mr. Dudley lived alone in the residence.

---

[2]All factual statements are taken from Deputy Smith's Affidavit in Support of Search and Seizure Warrant, attached as Exhibit B to Defendant's Memorandum in Support of Motion to Suppress ("Smith Aff.").

[3]The deputy did not explain in his affidavit how he learned that many of the units in the development were occupied by non-owner renters.

The investigators found that Mr. Dudley had a criminal record, including multiple charges of possession of a controlled substance or possession with intent to distribute. Additionally, Mr. Dudley had an outstanding warrant from California.

Deputy Smith decided to conduct another controlled buy with the CI. Again, he searched the CI for money, contraband and narcotics, and again found none. And again, he gave the CI money and accompanied the CI to the residence. While the CI was inside, the deputy observed several people enter and exit the apartment (later, the CI told Deputy Smith that each person who entered the apartment was a known narcotics user). After leaving the residence, the CI again gave Deputy Smith cocaine reportedly purchased from Mr. Dudley. The CI told investigators that Mr. Dudley had a semi-automatic handgun.

Based on the affidavit, the judge found probable cause to issue a warrant for Mr. Dudley's residence. The warrant described the property to be seized as cocaine, packaging material, drug paraphernalia, residency papers, currency, narcotic recordations, "[a]nd any other fruits and/or instrumentalities of the crime of distribution of a controlled substance, and or possession of a controlled substance." (Search and Seizure Warrant, 2, attached as Ex. A to Def.'s Mem. Supp. Mot. Suppress ("S&S Warrant").)

Officers executed the warrant and discovered the evidence Mr. Dudley now seeks to suppress.

## ANALYSIS

To support his motion to suppress, Mr. Dudley argues that: (A) the affidavit did not establish probable cause; (B) the warrant was not adequately specific; and (C) the discovery of the firearm unlawfully exceeded the warrant. The court addresses these arguments in turn.

A.      Probable Cause for Search Warrant

Mr. Dudley argues that the affidavit failed to establish probable cause, primarily because the CI's information was not shown to be reliable.

But the court finds that Deputy Smith's investigation thoroughly corroborated the CI's information before the deputy applied for the warrant. See United States v. Artez, 389 F.3d 1106, 1111 (10th Cir. 2004) ("'[W]hen there is sufficient independent corroboration of an informant's information, there is no need to establish the veracity of the informant.'") (quoting United States v. Danhauer, 229 F.3d 1002, 1006 (10th Cir. 2000)).

First, the deputy directed two controlled buys. For both controlled buys, the deputy searched the CI before and after the CI entered the residence, provided the CI money for the purchase, accompanied the CI to the residence, observed the CI go in and out of the residence, and received cocaine from the CI after the purchase. As the Tenth Circuit explained:

> The common formalities observed by police officers when conducting such controlled purchases are as follows: the police search the informant (and his vehicle, if appropriate) for money and contraband prior to the buy; give the informant money with which to purchase the narcotics; transport the informant to the suspect residence (or follow the informant to the residence); watch the informant enter the suspect residence, disappear while inside the suspect residence, and emerge from the suspect residence; search the informant upon exiting the suspect residence; and receive the narcotics from the informant.

Id. at 1111-12 (footnote omitted).

Second, the deputy observed several people entering and leaving the residence over a short period of time, evidencing a high probability of narcotics distribution inside the residence. Id. at 1114 ("[W]e believe that [the deputy sheriff]'s observation that a series of visitors entered the residence and stayed for only a short period of time did provide some additional

corroboration of the confidential informant's tip . . . .").

And third, the criminal background check revealed that Mr. Dudley had a history of involvement with narcotics and the deputy verified that Mr. Dudley likely lived in the residence. Id. ("[C]riminal history, combined with other factors, can support a finding of reasonable suspicion or probable cause.").

Given this evidence, as well as the great deference afforded to the issuing judge's determination of probable cause, the court finds the warrant was properly issued.  See id. at 1111 ("A magistrate judge's decision to issue a warrant is entitled to 'great deference.'"  Accordingly, we need only ask whether, under the totality of the circumstances presented in the affidavit, the magistrate judge had a 'substantial basis' for determining that probable cause existed.") (quoting Illinois v. Gates, 462 U.S. 213, 236, 238-39 (1983)) (citations omitted).

  B. Particularity of Search Warrant

Mr. Dudley also attacks the validity of the warrant, arguing that "the warrant was overly broad in stating that law enforcement could search and seize '[a]nd any other fruits and/or instrumentalities of the crime of distribution of a controlled substance, and or possession of a controlled substance.'" (Def.'s Mem. Supp. Mot. Suppress, 9 (quoting S&S Warrant).)

"The particularity requirement of the Fourth Amendment 'prevents a general, exploratory rummaging in a person's belongings . . . .'" United States v. Wicks, 995 F.2d 964, 973 (10th Cir. 1993) (quoting Coolidge v. New Hampshire, 403 U.S. 443, 467 (1971)).

But the Tenth Circuit has found language similar to the warrant for Mr. Dudley's residence "sufficiently specific in detail to avoid the evils of a general search." United States v. Sullivan, 919 F.2d 1403, 1424 n.31 (10th Cir. 1990) (upholding warrant for "personal property

consisting of records, receipts, papers, instrumentalities, and documents related to an on-going suspected criminal enterprise in the trafficking of and conspiracy to distribute, controlled dangerous substances . . . .") (emphasis added). And the circuit has recognized that search and seizure warrants for narcotics distribution may require broader language. Wicks, 995 F.2d at 973 ("We have upheld search warrants cast in comparably broad terms, where the subject of the search was a drug trafficking or drug dealing business, and where circumstances permitted only a more general listing of the items to be seized."); see also United States v. Henderson, 190 Fed. Appx. 667, 675 (10th Cir. 2006) ("[T]he warrant, together with the attached affidavit, was sufficiently particular in requiring the items, however broadly-referenced, to be related to the methamphetamine operation or identification of those involved"); United States v. Harris, 903 F.2d 770, 775 (10th Cir. 1990) ("'When the circumstances of the crime make an exact description of the fruits and instrumentalities a virtual impossibility, the searching officer can only be expected to describe the generic class of items he is seeking.'") (quoting Spinelli v. United States, 382 F.2d 871, 886 (8th Cir. 1967), rev'd on other grounds, 393 U.S. 410 (1969)).

Because the warrant solely authorized the search and seizure of items related to Mr. Dudley's alleged narcotics distribution, the warrant was sufficiently specific.

C. Plain View Doctrine

Finally, Mr. Dudley argues that the police unlawfully seized the firearm from underneath the sofa because it was neither included in the warrant nor in plain view.

When "an article is already in plain view, neither its observation nor its seizure would involve any invasion of privacy." Horton v. California, 496 U.S. 128, 133 (1990). But before the police may seize an item without a warrant, three elements must be satisfied: (1) the police

must lawfully be in the location; (2) the incriminating characteristic of the item must be immediately apparent; and (3) the police must have a lawful right to access the item. United States v. Naugle, 997 F.2d 819, 822 (10th Cir. 1993) ("First, the seizing officer must not have violated the Fourth Amendment 'in arriving at the place from which the evidence could be plainly viewed.' Second, the item must not only be in plain sight, but 'its incriminating character must also be immediately apparent.' Finally, 'not only must the officer be lawfully located in a place from which the object can be plainly seen, but he or she must also have a lawful right of access to the object itself.'") (quoting Horton, 496 U.S. at 136-37). Here, the seizure of the firearm met all three requirements.

First, the warrant authorized the police to enter Mr. Dudley's residence to search for cocaine and other specific items. Because those items could have easily been hidden underneath the sofa, the police lawfully looked under the sofa. See United States v. Matthews, 942 F.2d 779, 783 (10th Cir. 1991) (applying plain view doctrine when "the officers came across the weapons during the course of a lawful search for illegal drugs.").

Second, the incriminating characteristic of the concealed firearm was immediately apparent. The police knew that Mr. Dudley was a felon, and they knew he lived in the residence, making it highly likely that he constructively possessed the firearm in violation of federal law. United States v. Castorena-Jaime, 285 F.3d 916, 924 (10th Cir. 2002) ("An item's incriminating nature is immediately apparent if 'the officer had probable cause to believe the object was contraband or evidence of a crime.' . . . All that is required is a 'practical, nontechnical probability that incriminating evidence is involved.'") (quoting United States v. Sanchez, 89 F.3d 715, 719 (10th Cir. 1996); Texas v. Brown, 460 U.S. 730, 742 (1983)) (citations omitted); United

States v. Heckard, 238 F.3d 1222, 1228 (10th Cir. 2001) ("Constructive possession is sufficient for conviction under [the felon in possession of a firearm] statute. . . . Constructive possession requires a showing that a defendant knowingly holds the power to exercise dominion or control over the firearm. Dominion or control are properly inferred from exclusive possession of the premises . . . .") (citations omitted).

And third, because the police lawfully entered Mr. Dudley's residence, they had lawful access to the firearm. Naugle, 997 F.2d at 823 ("The final requirement is that the officer have a lawful right of access to the object. This factor is implicated in situations such as when an officer on the street sees an object through the window of a house, or when officers make observations via aerial photography or long-range surveillance.").

Accordingly, all three elements of the plain view doctrine are satisfied. The court finds the police lawfully seized the firearm.

**ORDER**

For the foregoing reasons, Mr. Dudley's Motion to Suppress Evidence (dkt. #48) is DENIED.

SO ORDERED this 7th day of August, 2007.

BY THE COURT:

Tena Campbell

TENA CAMPBELL
Chief Judge